GILMAN, Respondent, v. CAMERON, Appellant.

(226 N. W. 578.)

(File No. 6544.   Opinion filed August 3, 1929.)

*Louis H. Smith,* of Sioux Falls, for Appellant.
*Christopherson & Melquist,* of Sioux Falls, for Respondent.

BROWN, J. This action was commenced by plaintiff, a real estate agent in the city of Sioux Falls, against James Murphy, the owner of a house and lot in that city, to recover from Murphy $200 as commission for finding a purchaser for the property. Defendant Cameron, another real estate agent, claimed to be entitled to one-half of the commission, and before the time for answering expired Cameron was by order of the court substituted as defendant in place of Murphy, and Murphy, upon depositing the $200 with the clerk of court, was discharged as defendant in the action. Plaintiff did not in any respect amend his complaint after the substitution of Cameron, and the complaint as it comes before this court alleges that defendant (who is Cameron) was the owner of the real estate described, and that about June 8th he entered into an agreement with plaintiff whereby defendant listed for sale with plaintiff the real estate described, and that plaintiff agreed to procure a purchaser therefor, for which service to be rendered by plaintiff defendant agreed to pay plaintiff as a real estate commission the sum of $200; that plaintiff procured a purchaser with whom defendant entered into a contract for the sale of the property for $4,250, upon which there was paid the sum of $1,200 to defendant, and that defendant had refused to pay plaintiff the commission of $200, for which sum, with interest, judgment is demanded in the complaint. The answer of defendant Cameron admits that plaintiff was a real estate agent, that defendant owned the real estate described in the complaint, and denies each and every other allegation contained in the complaint, and further alleges that defendant and James Murphy entered into a written contract whereby defendant was given the exclusive agency for the sale of the real estate described, and was to get a commission of $200 if he procured a sale to be made; that defendant thereupon made an agreement with plaintiff to give him one-half the commission if he should procure a buyer; that plaintiff did procure a buyer; and that there was due him from defendant $100 which defendant has at all times been ready to pay, and offers to let plaintiff have judgment for that sum. On a trial to the court without a jury the court found for plaintiff and gave judgment for the full amount demanded, from which judgment and from an order denying a new trial defendant appeals.

In this court plaintiff endeavors to sustain the judgment in his

favor on the theory that defendant, although having employed him to find a purchaser, was going to buy the property from Murphy and then sell it to the purchaser plaintiff should find, but that defendant, after plaintiff produced the possible purchaser, endeavored to buy the property from Murphy, but his offer was refused; that thereupon plaintiff treated defendant as out of the deal altogether, and communicated directly with Murphy, who entered into a contract with the purchaser produced, and agreed to pay plaintiff $200 as a commission, and that plaintiff is therefore entitled to the $200 deposited with the clerk of court by Murphy. It will be seen that this theory is completely at variance with the allegations of the complaint wherein it is alleged that defendant, who is Cameron, listed the property for sale with plaintiff, and agreed to pay plaintiff a commission of $200, if a sale was made. The theory is also completely at variance with the evidence in the case. There is no evidence whatever that Murphy ever listed this property for sale with plaintiff or that Murphy ever agreed to pay plaintiff a commission of $200, and the findings of the court to that effect are without any support in the evidence.

There is some conflict in the testimony. Defendant testified that Murphy made a written listing contract for the sale of the property with him, which written contract was offered in evidence, but was excluded by the court on the ground that it had never been called to plaintiff's attention. Defendant also testified that, after having gotten this written contract, he told plaintiff that he had the property for sale, and agreed to divide the commission of $200 with him, if he should get a buyer; that he drove plaintiff in his car out to the house and showed it to him, and that plaintiff agreed to procure a buyer for one-half of the $200 commission; that next day plaintiff phoned him he had an offer of $4,250 for the property, which defendant submitted to Murphy, and asked Murphy to go to plaintiff's office and see if they could make a deal, which Murphy did, and a contract was closed with the proposed purchaser for the price and on the terms submitted by plaintiff to defendant, and by him communicated to Murphy. Murphy in all respects corroborated this testimony of defendant, and further said that before the contract with the purchaser was entered into he told plaintiff that Cameron had a commission on the deal, and that he was only going to pay one commission, to which plaintiff re-

sponded that he knew that, and that he and Cameron had agreed on the commission; that plaintiff then wanted him to pay him all of the $200, and he would settle with Cameron; that Murphy refused to do this, and called Cameron by phone, and informed him that plaintiff wanted the whole commission, whereupon Cameron told him to pay plaintiff his one-half and keep the other one-half until Cameron came to Sioux Falls.

Plaintiff's testimony is difficult to understand and difficult to reconcile with itself. At one place he says that Cameron told him he could sell a house cheap, and asked if he could get a buyer; that Cameron took him out and showed him the house, and told him to submit any offer he should get; at another place he says, "Cameron did not tell me at that time that he had the house for sale. He said he wanted to buy it." He says when he got the offer of $4,250 he called Cameron by phone and told him of the offer, and Cameron said he would come down the next morning, and said, "I will buy it from you." It is hard to understand why Cameron should say he would buy the property from plaintiff when he knew plaintiff did not own it and when he had an exclusive contract for its sale from Murphy, whom he knew was the owner. Plaintiff admits that he knew nothing of Murphy until defendant told him and asked his assistance in finding a buyer. Plaintiff had no communication whatever with Murphy until, as he says, he called Murphy direct after getting the offer of $4,250. He denies that Murphy told him there would be only one commission, but admits that Cameron offered to pay him $100 commission, that they "were to get equal commission," and "were to share equal on the sale of the house." He says that, at the time Murphy and the buyer made the contract at his office, "I told Murphy he would owe me $200," but does not claim that Murphy ever assented to this. On the contrary, he testified: "At the time the deal was closed I told Murphy it is all over, and now the commission, and I started to write a check for $200 when Murphy stopped me and told me to make it for $100."

Disregarding all conflict and inconsistencies in plaintiff's testimony, it is clear from that testimony alone that the evidence is insufficient to justify the finding of the court that Murphy listed the property for sale with plaintiff or that Murphy ever agreed to pay plaintiff the sum of $200 as commission for procuring a pur-

chaser. Plaintiff testified that he asked Murphy to pay him the $200, and "told Murphy I would give him a receipt in full and would settle with Cameron." Being asked on cross-examination if Cameron had anything coming, plaintiff testified: "I offered him a third," and "figured that was what he had earned in that proposition." It is difficult to understand how he could figure that Cameron had earned anything, if Cameron's only connection with the deal was to buy the property and resell it to such purchaser as plaintiff could produce, and that Cameron had wholly failed in his attempt to buy the property.

We think it is clear from plaintiff's own testimony that Cameron's offer to pay him $100 commission, that they were to get equal commission, and were to share equally on the sale of the house, shows that plaintiff and Cameron were acting together in finding a purchaser for the property, and that plaintiff is not entitled to recover more than the $100 for which the offer of judgment was made.

The judgment and order denying a new trial are reversed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., not sitting.